IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Lee K. Ponshe,
      Petitioner,

    v.

Matthew Plummer, Warden,
Menard Correctional Center,
      Respondent.

No. 1:25-cv-08819

The Honorable Manish S. Shah,
Judge Presiding.

**PETITIONER'S REPLY IN SUPPORT OF HIS PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

Detectives told Lee Ponshe — a father with no criminal record, distraught because his four-year-old son in his sole custody had been taken from him hours earlier — that they did not "wanna break you and your son up at all," and that "the sooner we get beyond this, the sooner we can do that." Dkt. 9-14 at 124-25 (Ex. C at 49-50). Minutes later he said, "I must've done it." *Id*. The question is whether a state court could reasonably call that interrogation non-coercive, and whether the other constitutional errors at Mr. Ponshe's trial can be waived away on a cold record. They cannot.

Mr. Ponshe is serving seventy-five years — a de facto life sentence — for the death of eighteen-month-old H.B. He does not minimize that loss. But the Constitution forbids condemning any person through a trial tainted by a coerced confession, by propensity evidence the state appellate court itself called a "fairly blatant due process issue," by a judge who sided with the prosecution in front of the jury, and by the broadcast of his own

lawyer's private view that the case was "gonna be fucking rough." Respondent's Answer does not defeat these claims. It sidesteps the controlling authority — most strikingly the Supreme Court's January 2025 decision in *Andrew v. White*, which Respondent never cites — and asks this Court to bless state-court rulings that no fairminded jurist could sustain. This Court should issue the writ.

## I. Respondent's timeliness concession clears the way to the merits of all five claims.

One threshold point narrows the dispute. Respondent concedes that the Petition was filed within the one-year limitations period of 28 U.S.C. § 2244(d)(1), calculating that the clock ran for 364 of the allotted 365 days. Dkt. 8 at 10 n.5. Mr. Ponshe filed his Petition with a protective motion for equitable tolling because counsel believed the filing might be one day late. Respondent's concession moots that motion. No limitations bar remains, and the Court may proceed to the merits of every claim.

## II. Cause and prejudice, and the fundamental-miscarriage-of-justice gateway, permit review of the defaulted claims.

Respondent contends that Claims 2 (judicial bias), 3 (prejudicial other-acts evidence), and 5 (the refused manslaughter instruction) are procedurally defaulted because the Illinois courts found them forfeited. Procedural default, however, is not a jurisdictional wall. A federal court may reach a defaulted claim when the petitioner shows cause and prejudice, or that a failure to review would work a fundamental

2

miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Each defaulted claim qualifies under one route or both.

**A.      *Martinez* supplies cause for the trial-counsel default underlying Claim 3.**

Claim 3 — the admission of Rachel Eggleston's testimony that another eighteen-month-old in Mr. Ponshe's care had been injured — is bound up with trial counsel's failure to object to that testimony. The post-conviction appellate court flagged the problem, and Mr. Ponshe raised trial counsel's failure to object as an ineffective-assistance claim, but only belatedly, in his post-conviction petition for leave to appeal. See Dkt. 8 at 9-10. Where a substantial ineffective-assistance-of-trial-counsel claim is defaulted because post-conviction counsel failed to raise it in the initial-review collateral proceeding, the deficient performance of post-conviction counsel is cause. *Martinez v. Ryan*, 566 U.S. 1, 9, 14 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). The underlying claim is substantial: the post-conviction appellate court itself volunteered, in a case about a dead child, that admitting the parachute testimony presented a serious due process problem and a real likelihood that the jury convicted on it. Dkt. 9-20 at 18 n.4; Dkt. 8 at 9-10. That is the substantial claim *Martinez* requires. *Martinez*, 566 U.S. at 14.

Candor compels two acknowledgments. *Martinez* excuses the default of ineffective-assistance-of-trial-counsel claims; it does not, under *Davila v. Davis*, extend to claims of ineffective assistance of appellate counsel. *Davila v. Davis*, 582 U.S. 521, 524-25 (2017). The cause argument, therefore, reaches Claim 3 through the embedded trial-

counsel claim, not through any theory that appellate counsel erred. And the prejudice is concrete: Mr. Ponshe has been denied federal review of a constitutional claim that the reviewing state court itself believed may have driven the verdict. *Murray v. Carrier*, 477 U.S. 478, 494 (1986).

**B.** **The miscarriage-of-justice gateway independently reaches Claims 2, 3, and 5.**

Even setting cause aside, the fundamental-miscarriage-of-justice gateway opens the door. A petitioner passes through it by showing that a constitutional violation probably resulted in the conviction of one who is actually innocent — that it is more likely than not that no reasonable juror, properly instructed and shielded from the unconstitutional evidence, would have convicted. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). This case fits. The medical evidence was genuinely contested: two defense experts disputed the cause and manner of H.B.'s death, with one testifying that her death was not caused by trauma at all. Dkt. 8 at 7. Strip away the parachute propensity evidence and the broken-will confession, and what remains is a credibility contest between medical experts — not proof beyond a reasonable doubt.

**C.** **Claim 5 is defaulted, but its merits remain open through that same gateway.**

Respondent is correct that Mr. Ponshe presented the involuntary-manslaughter claim to the Illinois Appellate Court on direct appeal but omitted it from his direct-appeal

4

petition for leave to appeal. Under *O'Sullivan v. Boerckel*, that omission defaults the claim, and this Reply does not pretend otherwise. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). But default is not the end. The same *Schlup* gateway that reaches Claims 2 and 3 reaches Claim 5, because a jury never given the option to convict of the lesser offense the evidence supported may well have convicted of murder only for lack of an alternative. The merits, addressed in Part VII, supply the prejudice.

### III. The state court unreasonably applied *Strickland* when it upheld counsel's failure to move to suppress Mr. Ponshe's confession (Claim 1).

#### A. The preserved claim does not depend on the broader theory Respondent disputes.

Respondent argues that Claim 1, as exhausted, was narrower than the federal petition — limited to the "I must've done it" statement and the family-reunification theory. The Court need not resolve that boundary, because the state court's rejection of the preserved core was itself an unreasonable application of *Strickland v. Washington*. *Strickland v. Washington*, 466 U.S. 668 (1984). To the extent any portion was unexhausted, it was unexhausted because trial counsel never moved to suppress at all — the very omission that is the ineffective assistance. *Pole v. Randolph* does not bar review of a claim that went unlitigated because counsel failed to litigate it. *Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009).

**B.     The interrogation was objectively coercive, and *Lynumn* controls.**

Voluntariness turns on the totality of the circumstances — "both the details of the interrogation and the characteristics of the accused" — and asks whether the suspect's will was overborne. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963). Respondent recites those standards and then drains them of meaning, recasting the detectives' repeated invocations of Mr. Ponshe's son as a neutral "general prediction." The record refutes that characterization. Before Mr. Ponshe broke, the detectives told him that releasing "it" would make "the stress and all the stomach upset" "go away"; assured him, when he said he would go to prison for life, "That's not true at all"; framed a "choice" between telling the truth and being "painted as a monster"; and promised, "I don't wanna break you and your son up at all. I wanna try to get everybody back together, ok, and the sooner we get beyond this, the sooner we can do that." Dkt. 8 at 4-5; Dkt. 9-14 at 124 (Ex. C at 49). Indeed, the first words Mr. Ponshe spoke after he succumbed to the coercion were to ask when he could see his son. Dkt. 9-14 at 134 (Ex. C at 59) ("You guys said earlier that I would be with him again, we would try to keep the families together"); see also Dkt. 9-27 at 19. He needed the pain to stop.

*Lynumn* maps onto these facts. There, officers told a Chicago mother with no criminal history that she would lose her children and her welfare benefits unless she cooperated, and the Supreme Court unanimously held the resulting confession coerced. *Lynumn*, 372 U.S. at 534. Here, as in *Lynumn*, the suspect had no record; here, as in *Lynumn*, the officers exploited the suspect's bond with his child; and here, as in *Lynumn*,

6

the coercion worked by making the suspect believe that confession was the path to preserving his family. Respondent's attempt to distinguish *Lynumn* on the ground that the detectives offered a benefit rather than threatened a harm collapses on inspection: a promise to reunite a father with his son "the sooner we get beyond this" carries the unmistakable corollary that silence keeps the son gone. A conditional promise of that magnitude overbears the will as surely as a threat. The Seventh Circuit cases Respondent invokes — *United States v. Montgomery* and *United States v. Villalpando* — involved generic encouragement to cooperate, not the repeated, targeted use of a suspect's child as both lever and lure. *United States v. Montgomery*, 555 F.3d 623 (7th Cir. 2009); *United States v. Villalpando*, 588 F.3d 1124 (7th Cir. 2009). On this record, the state court's no-coercion finding was not merely wrong; it was unreasonable, and AEDPA does not shield it.

**C.     The "strategic decision" rationale cannot bear the weight placed on it.**

The state court excused counsel's inaction as a "reasoned trial strategy" — a plan to use Mr. Ponshe's sympathetic demeanor to attack mens rea. *Strickland* protects strategy, but only strategy actually exercised. *Strickland*, 466 U.S. at 690-91; *Wiggins v. Smith*, 539 U.S. 510, 526-28 (2003) (rejecting a "strategic" label that counsel's own conduct belied). Had counsel truly chosen to deploy the sympathetic portions of the interview, he would have sought to redact the devastating ones — "I smacked her one time," "I'm a fucking murderer," and the knuckle-rap demonstration of the blows. Instead he let the entire confession in. A strategy that admits a defendant's filmed self-description as a murderer to prove he lacked a murderous mental state is not a strategy; it is a rationalization

7

supplied after the fact. The state court's acceptance of it was an unreasonable application of *Strickland*

### D. The "I must've done it" statement was the hinge of the confession, not a harmless duplicate.

Respondent argues that suppressing "I must've done it" would have changed nothing because worse admissions followed. That reverses the causation. "I must've done it" was the moment the interrogation turned — the first crack from which every later admission flowed. If the tactics that produced it were unconstitutional, the statements they unlocked are themselves suspect. See *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Respondent's "overwhelming evidence" refrain fares no better: prejudice under *Strickland* asks only for a reasonable probability of a different result. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). With the medical evidence in genuine dispute — one defense expert finding no trauma at all — the confession was not cumulative of an airtight case. It was the case.

### IV. The trial judge's in-court rebuke of the defense created an appearance of bias that violated due process (Claim 2).

Due process guarantees a trial before a judge without bias against the defendant. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Judicial conduct that would make a reasonable observer question the judge's impartiality offends that guarantee even without proof of subjective animus. *Franklin v. McCaughtry*, 398 F.3d 955, 959-60 (7th Cir. 2005); see *Liteky v. United States*, 510 U.S. 540, 555 (1994). Here, when defense counsel tried to demonstrate the race-car parachute, the trial judge interrupted, characterized the

sound as an "explosion," struck the demonstration, and — in instructing the jury — pointedly contrasted the defense's effort with the State's earlier attempt to demonstrate the same device. The message was not neutral housekeeping; it told the jury, in a case where the parachute evidence was the principal proof of propensity, that the State had done it right and the defense had done it wrong. Respondent recasts this as ordinary courtroom management, but a reviewing court that itself called the surrounding issue a "fairly blatant due process issue," Dkt. 9-20 at 18 n.4; Dkt. 8 at 9-10, cannot credibly insist no reasonable jurist would debate it. At a minimum, Claim 2 warrants merits review and a certificate of appealability.

**V.** **_Andrew v. White_ and _Payne v. Tennessee_ make the parachute testimony a due process violation, and Respondent ignores both (Claim 3).**

    **A.** **_Andrew v. White_ is controlling, recent, and unaddressed.**

On January 21, 2025, the Supreme Court held that the principle of _Payne v. Tennessee_ — that the Due Process Clause forbids evidence "so unduly prejudicial as to render a criminal trial fundamentally unfair" — is clearly established federal law for AEDPA purposes, indeed "a holding of th[e] Court." _Andrew v. White_, 604 U.S. 86, 92-94 (2025) (per curiam); _Payne v. Tennessee_, 501 U.S. 808, 825 (1991). The Court vacated the Tenth Circuit for holding otherwise and directed it to ask whether the challenged evidence was so unduly prejudicial as to render the trial fundamentally unfair. _Andrew_, 604 U.S. at 94-95. Respondent filed his Answer on March 16, 2026 — fourteen months after _Andrew_ — and never mentions it. That silence does not make the controlling authority disappear; it leaves Respondent without an answer to it.

**B. The Eggleston testimony was the paradigm of unduly prejudicial propensity evidence.**

Rachel Eggleston testified that, while she lived with Mr. Ponshe, her eighteen-month-old son suffered bruising and swelling in his care; that Mr. Ponshe blamed a race-car parachute; and that he discouraged medical attention and proposed a cover story. Dkt. 8 at 6-7. The parallels to the charged crime were assembled for effect: two eighteen-month-olds, two injuries blamed on accidents, two efforts to avoid doctors. Their only purpose was to tell the jury that Mr. Ponshe is the kind of man who hurts children and to invite conviction on that basis — the propensity inference the law forbids. *Huddleston v. United States*, 485 U.S. 681, 685-86 (1988); *Andrew*, 604 U.S. at 92-94. The post-conviction appellate court's own assessment — a "fairly blatant due process issue" with a "strong possibility" that the jury convicted on the parachute incident, a reading Respondent's Answer confirms, Dkt. 9-20 at 18 n.4; Dkt. 8 at 9-10 — is itself a finding of fundamental unfairness in all but name.

**C. However the default is resolved, the constitutional violation is reviewable and clear.**

Because the Illinois courts dismissed Claim 3 on forfeiture rather than the merits, the claim — once the default is excused under Part II — receives de novo review. *Cone v. Bell*, 556 U.S. 449, 472 (2009). Under that standard the violation is manifest: no limiting instruction could neutralize evidence that, in a child-murder trial, the defendant had

10

injured another child. *Andrew* and *Payne* forbid exactly this, and they forbid it under law clearly established long before Mr. Ponshe's trial.

**VI.     Counsel's failure to keep the jury from hearing his own lawyer call the case hopeless was deficient and prejudicial (Claim 4).**

A court may resolve an ineffectiveness claim on prejudice alone, *Strickland*, 466 U.S. at 697, but should not ignore deficiency where it is plain — and here it is. The jury heard, from a recorded jail call, Mr. Ponshe's father relay trial counsel's own assessment: "it's gonna be fucking rough. It's really gonna be fucking tough." Dkt. 8 at 6. Counsel did not object before the redacted call was played; he moved to strike only afterward, when the bell could not be unrung. Dkt. 8 at 6. A lawyer's candid appraisal of his client's case is quintessential work product. *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *United States v. Nobles*, 422 U.S. 225, 238 (1975). Letting the jury hear that the defendant's own lawyer thought the case unwinnable is not strategy; counsel's belated motion to strike proves he recognized the harm but acted too late.

Respondent rests entirely on the state court's finding that the other evidence was "overwhelming." For the reasons given in Part III.D, that premise is unreasonable on a contested medical record. And Claim 4 carries a harm Respondent never confronts: this was not one more inculpatory fact but the defense lawyer conceding, in the jury's hearing, that he did not believe in his client. Prejudice under *Strickland* means a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. A jury told

11

that defense counsel had given up, and then convicting, undermines that confidence directly.

## VII. The refusal to instruct on involuntary manslaughter denied due process because the evidence supported the lesser offense (Claim 5).

When the evidence would permit a rational jury to convict of a lesser included offense, refusing the instruction risks a conviction driven not by proof beyond a reasonable doubt but by the jury's unwillingness to let a defendant go free. *Beck v. Alabama*, 447 U.S. 625, 634, 642 (1980); *Hopper v. Evans*, 456 U.S. 605, 611 (1982). Under Illinois law, involuntary manslaughter requires only recklessness, while first-degree murder requires knowledge of a strong probability of death or great bodily harm. 720 ILCS 5/9-3(a). The evidence supported the lesser mental state: one defense expert could not identify the cause of the brain swelling, another testified the death was not caused by trauma at all, and Mr. Ponshe's own account described a single blow struck while he was "half asleep" and impaired by alcohol and medication. Dkt. 8 at 5-7. That is the classic reckless-conduct scenario. Respondent offers no merits defense of Claim 5, having argued only default; with the default excused under Part II, the Court should reach the merits, *Cone v. Bell*, 556 U.S. at 472, and grant relief.

## VIII. AEDPA deference protects reasonable state-court decisions, not unreasonable ones.

Respondent invokes AEDPA's "doubly deferential" review. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The standard is

12

correctly stated and beside the point. Deference ends where the state court's error lies "beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Shinn v. Kayer*, 592 U.S. 111, 118 (2020). A no-coercion finding that cannot survive *Lynumn*, a "strategy" finding that cannot survive *Wiggins*, and a no-prejudice finding that ignores a live dispute between two defense experts each fall on the unreasonable side of that line. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

## IX.     A certificate of appealability should issue on all five claims.

A certificate of appealability issues when jurists of reason could debate the merits or the procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Each claim meets that modest threshold. Claim 1 asks whether *Lynumn* tolerates a confession extracted by repeatedly tying a father's reunion with his son to his confession. Claim 2 asks whether a judge's in-trial endorsement of the State's evidence, over an issue the appellate court called "fairly blatant," created an unconstitutional appearance of bias. Claim 3 asks whether propensity evidence the state court thought may have produced the verdict violated *Andrew* and *Payne*. Claim 4 asks whether counsel could constitutionally let the jury hear his own verdict on the case. Claim 5 asks whether the refused instruction violated *Beck*. Reasonable jurists would debate each.

## X.     Conclusion.

Mr. Ponshe's trial was infected by a confession wrung from a grieving father, by propensity evidence the state court itself distrusted, by a judge who took the State's side

before the jury, by the broadcast of his own counsel's surrender, and by the denial of an instruction two defense experts supported. Respondent's Answer meets none of it — it ignores *Andrew v. White*, misreads *Lynumn*, and asks this Court to call the unreasonable reasonable. Petitioner Lee K. Ponshe respectfully requests that this Court excuse any procedural default of Claims 2, 3, and 5; grant the writ on any of the five Claims and vacate his conviction and sentence; issue a certificate of appealability on all five claims; and grant such further relief as is just.

Respectfully submitted,

/s/ David Lewarchik
David Lewarchik, Esq.
Counsel for Petitioner Lee K. Ponshe
Lewarchik Law LLC
939 W. North Avenue, Suite 750
Chicago, Illinois 60642
Phone: (312) 517-3877
dwl@appealcounsel.com

14

**CERTIFICATE OF SERVICE**

I certify that on the date set forth below I electronically filed the foregoing Petitioner's

Reply in Support of His Petition for a Writ of Habeas Corpus with the Clerk of the United

States District Court for the Northern District of Illinois using the CM/ECF system, which

served notice on all counsel of record, including:


Elizabeth Bays
Assistant Attorney General
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
elizabeth.bays@ilag.gov

/s/ David Lewarchik
David Lewarchik, Esq.
Dated: July 21st, 2026

15