UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEE PONSHE,<br><br>Petitioner,<br><br>v.<br><br>MATTHEW PLUMMER,* Warden, Menard Correctional Center,<br><br>Respondent. | No. 25 CV 8819<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

A jury convicted petitioner Lee Ponshe of the first-degree murder of his then-fiancée's 18-month-old daughter and the state-court judge sentenced him to 75 years in prison. He petitions for a writ of habeas corpus under 28 U.S.C. § 2254. As discussed below, Ponshe's claims are either procedurally defaulted or resolved by the state courts through a reasonable application of federal law, and he does not fall within any exception permitting federal habeas review. The petition and request for a certificate of appealability are denied.

## I. Legal Standards

Ponshe unsuccessfully challenged his conviction through the state courts. Federal review of these state-court decisions is limited. With respect to a state court's determination of an issue on the merits, a federal court may grant habeas relief only

* The Clerk shall correct the docket to substitute Plummer, the Warden of Menard Correctional Center, for Anthony Wills. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held.").

if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Harrington v. Richter*, 562 U.S. 86 (2011). An application of federal law is unreasonable if the state court identifies the correct legal rule but unreasonably applies it to the facts, unreasonably extends the legal rule to a new context, or unreasonably refuses to extend the rule to a new context where it should apply. *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018). Federal courts must presume that the facts relayed by the last state court to pass on the merits are correct, subject to clear and convincing evidence rebutting that presumption. *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012).

A state prisoner must assert his federal claim through "one complete round of state court review," either on direct appeal or through a postconviction proceeding. *McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018) (quoting *Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013)). If a petitioner asserts a claim for relief that he did not present to the state courts, the claim is procedurally defaulted. *Id.*; *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010). And if a state court denies a petitioner's claim based on his failure to comply with a state procedural rule, that is an adequate and independent state ground. In that situation, the claim is procedurally defaulted and a federal court may not review it. *Davila v. Davis*, 582 U.S. 521, 527–28 (2017).

A petitioner may nevertheless obtain federal review of procedurally defaulted claims if he can show "cause" to excuse the failure and "actual prejudice resulting

from the alleged constitutional violation." *Id.* at 528 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)); *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016); *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010). To establish cause, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 582 U.S. at 528 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). For example, "attorney error is an objective external factor providing cause for excusing a procedural default" if that error "amounted to a deprivation of the constitutional right to counsel." *Id.*

Alternatively, a habeas petitioner may circumvent a procedural bar by showing that the federal court's failure to address his claim would result in a "fundamental miscarriage of justice." *Jones*, 842 F.3d at 461; *Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016); *Kaczmarek*, 627 F.3d at 591. That exception applies only in the "rare case" in which a petitioner can "prove that he is actually innocent." *Blackmon*, 823 F.3d at 1099 (quoting *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013)). To do so, he must present "new reliable evidence" that was not presented at trial and establish that it is "more likely than not that no reasonable juror would have convicted him" in light of that new evidence. *Jones*, 842 F.3d at 461 (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995)).

## II. Background

In April 2009, petitioner Lee Ponshe was charged with first degree murder in the Circuit Court of Will County. [9-20] at 2, ¶ 4.[1]

### A. Trial

On April 12, 2009, Jessie Evans left her daughter, H.B., with her then-fiancée, petitioner. [9-20] at 2, ¶ 6. When she returned home, H.B. was still awake and had a bruise on her cheek. [9-20] at 2, ¶ 6. Ponshe said the bruise was caused by H.B. falling off a toy. [9-20] at 2, ¶ 6. The next day, when Ponshe was alone at his residence with H.B., Evans called petitioner and heard H.B. crying. [9-20] at 2, ¶ 6. Ponshe reported that H.B. had fallen into the crawl space and was sitting on her bottom. [9-20] at 2, ¶ 6. Evans checked on H.B. that night, saw her sleeping, and did not hear H.B. the remainder of the night. [9-20] at 3, ¶ 6.

The morning of April 14, Ponshe told Evans that H.B. had been awake since 4 a.m. [9-20] at 3, ¶ 7. Evans noticed that H.B. had a swollen lip. [9-20] at 3, ¶ 7. That day, H.B. ate breakfast, ran errands with Evans and Ponshe, took a nap, and played with Evans. [9-20] at 3, ¶ 7. Just after 7 p.m., after H.B. had been put down for her

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The Illinois appellate court's decision on petitioner's postconviction petition, [9-20] (*People v. Ponshe*, 2024 IL App (3d) 3-20-0492 (Sept. 5, 2024 Ord. Affirming Denial of Second-Stage Postconviction Petition)), was the last court to review the merits of Ponshe's ineffective-assistance claim related to a motion to suppress evidence, and the appellate court's decision on petitioner's direct appeal, [9-5] (*People v. Ponshe*, 2015 IL App (3d) 3-13-0152 (Aug. 11, 2015 Ord. Affirming Conviction on Direct Appeal)), was the last court to review Ponshe's ineffective-assistance claim related to his lawyer's mental impressions being disclosed to the jury. *See Stechauner v. Smith*, 852 F.3d 708, 714 (7th Cir. 2017) (explaining that the operative decision under review is that of last state court to address a given claim on the merits).

second nap, Ponshe screamed that she was not breathing. [9-20] at 3, ¶ 7. Evans noticed that H.B.'s lips were blue and began CPR. [9-20] at 3, ¶ 7. H.B. was pronounced dead when she arrived at the hospital. [9-20] at 3, ¶ 7.

The next day, two detectives interviewed Ponshe. [9-20] at 3, ¶ 8. The trial court admitted the video-recorded interview into evidence and published it to the jury. [9-20] at 3, ¶ 8. During the interview, one of the detectives informed Ponshe that the autopsy indicated that H.B. did not die from a fall in the crawl space and suggested that Ponshe unintentionally hurt H.B. [9-20] at 3, ¶ 8. The detective acknowledged that raising his four-year-old son and having a new fiancée and her infant in his home likely caused petitioner stress. [9-20] at 3, ¶ 8. Petitioner initially told the detectives that he had "no idea" what happened to H.B. and stated he was upset that his son was taken away from him that day. [9-20] at 3, ¶ 8.

The detectives told Ponshe that they "wanna keep the families together" and "wanna see everything back for you." [9-20] at 4, ¶ 8. They also suggested to Ponshe that if they could "show a reasonable jury … a reasonable reason" why Ponshe was a great guy that just snapped, then things could work out for him. [9-20] at 4, ¶ 8. When Ponshe said he would have to spend the rest of his life in prison, the detectives told him that he was "putting the cart way before the horse." [9-20] at 4, ¶ 8. They told petitioner that they couldn't make judgments about a prison sentence and suggested that the sooner petitioner told them the truth, the sooner he could be back together with his son. [9-20] at 5, ¶ 8. Petitioner then said: "I must've, I must've done it. I

must've done it." [9-20] at 5, ¶ 8. He followed up by saying he "smacked her one time" and that he was "a fucking murderer." [9-20] at 6, ¶ 8.

Ponshe later reported to the detectives that he believed he hit H.B. at least two times and demonstrated how he hit her. [9-20] at 5, ¶ 8. An edited telephone conversation between Ponshe and his father was played for the jury. [9-5] at 5, ¶ 13. During the call, Ponshe stated that he had seven or eight vodka drinks the night before H.B.'s death. [9-5] at 5, ¶ 13. Petitioner's father said he had hired the best criminal lawyer, but that he didn't know if he could get his son out of trouble. [9-5] at 5, ¶ 13. Ponshe's father then reported that the lawyer had told him that the case was going to be "fucking rough." [9-5] at 5, ¶ 13. Defense counsel objected to the portion of the conversation where Ponshe and his father talked about the quality of his lawyer, but the court overruled the objection, having ruled pretrial to admit the edited version of the call as played to the jury. [9-5] at 6, ¶ 14.

A pediatric neuropathologist testified that H.B. had sustained a "considerable nonaccidental injury" consistent with having incurred "several blows to her head," which caused her death. [9-20] at 7, ¶ 9. She also testified that H.B.'s injuries were inconsistent with a fall in the crawl space and concluded that H.B. had been abused within 24 to 48 hours of her death. [9-20] at 7, ¶ 9.

Before trial, the State moved to admit evidence of a prior bad act by petitioner against a different child. [9-20] at 2, ¶ 5. The prosecution sought to introduce evidence that another child received injuries while in petitioner's care and that petitioner explained those injuries to the child's mother by claiming they were the result of a

self-inflicted accident. The prosecution offered to present a live demonstration of the type of incident petitioner had claimed was the cause of the injuries. [9-20] at 2, ¶ 5. Defense counsel objected only to a live demonstration and the court permitted the State to enter a video of the demonstration, allowed the mother to testify about the incident itself, and allowed a defense expert to explain the mechanics of the purported accident. [9-20] at 2, ¶ 5.

The child's mother, Rachel Eggleston, testified that she was previously in a romantic relationship with Ponshe and that she and her 18-month-old son had lived with Ponshe and Ponshe's son. [9-20] at 7, ¶ 10. One night, petitioner woke Eggleston and told her that her son was walking around the garage and accidentally deployed a parachute from Ponshe's race car. [9-20] at 7, ¶ 10. Eggleston observed a large bruise and swelling on the side of her son's face. [9-20] at 7, ¶ 10. Ponshe advised Eggleston against taking her son to the hospital. [9-20] at 7, ¶ 10. Eggleston also observed that her son became scared of Ponshe in the days following the incident. [9-20] at 7, ¶ 10.

The video recording showed a stationary race car deploying a parachute. [9-20] at 7–8, ¶ 11. When the spring released the parachute, the parachute dropped to the floor about one foot from the rear of the car. [9-20] at 8, ¶ 11. A body shop owner testified that the type of parachute on Ponshe's race car could "go off inadvertently." [9-20] at 8–9, ¶ 14. Defense counsel demonstrated the release of the spring and parachute by compressing and then releasing a spring to hit the witness stand and the State objected. [9-20] at 9, ¶¶ 14–15. Outside the presence of the jury, the parties

discussed the objection and the court reprimanded defense counsel for conducting the demonstration without its permission. [9-20] at 9–11, ¶¶ 14–16. The court then sustained the objection and informed the jury that the demonstration was "totally improper" and that they should disregard any impressions they may have made as unrepresentative of how the parachute deploys. [9-20] at 11, ¶ 16.[2]

Defense counsel called a forensic pathologist, who was unable to determine H.B.'s cause of death. [9-20] at 8, ¶ 12. Though he agreed that the swelling of H.B.'s brain caused her death, he could not say what had caused the swelling. [9-20] at 8, ¶ 12. He also admitted that the State's expert had a "very good reputation" and deferred to her opinion because he did not hold the same qualifications. [9-20] at 8, ¶ 12. A neuropathologist also testified as an expert witness and though he was unable to testify regarding the cause of H.B.'s injuries, he also knew the State's expert to be a "very well-regarded" pediatric neuropathologist. [9-20] at 8, ¶ 13.

[2] The State did not directly reference the video recording of a parachute deploying in its closing argument nor the testimony of the body shop owner. It argued instead that the photographs of the injury were inconsistent with a parachute hitting a child in the face and instead appeared to depict "a hand impression on the side of the face." [9-24] at 1257–58. In its rebuttal argument, the State explained that the parachute incident was relevant only to show that Ponshe "engaged in a pattern of behavior when dealing with children," and that the parachute's deployment mechanism was "a complete red herring" and could not have caused the extent of the injuries the child sustained. [9-24] at 1321–22.

Defense counsel, by contrast, did mention the video and the defense's attempted demonstration in response: "[The trial judge] stated that the defense didn't want you to see a demonstration of the race car. He's right. We don't want you to see the video. We don't want you to hear anything about this event because it has nothing to do with anything." [9-24] at 1276–77. He then faulted the State for failing to produce medical evidence that the injury could not have happened from a parachute being inadvertently deployed and argued instead that the parachute mechanism was located at the "perfect height" for a child. [9-24] at 1278.

The trial court did not give a limiting instruction to the jury governing its use of prior act evidence. *See* [9-24] at 1328–38.

Defense counsel requested a jury instruction on involuntary manslaughter. [9-5] at 10, ¶ 29. The trial court concluded that there was no evidence of recklessness that would justify giving this lesser-included instruction. [9-5] at 10, ¶ 29. The jury found defendant guilty of first-degree murder. [9-20] at 11, ¶ 16.

**B. State-Court Review**

*1. Direct Appeal*

Ponshe appealed his conviction to the Illinois Appellate Court. He raised two claims: first, that he was denied the effective assistance of counsel when his attorney allowed the jury to hear petitioner's father say that the lawyer thought that defending the case was going to be "fucking rough," and second, that he was entitled to resentencing because the trial court relied on an unconstitutional mandatory life sentence provision. [9-1]. Through a supplemental brief, Ponshe also argued that the trial court erred in refusing to instruct the jury on the offense of involuntary manslaughter. [9-2]. The court affirmed Ponshe's conviction but vacated his sentence. [9-5] at 19, ¶ 56.[3]

As relevant here, the appellate court found that the statements revealing "defense counsel's assessment of defendant's chances of success were irrelevant, demoralizing and denigrating to the 'cause of justice' and should not have been published to the jury." [9-5] at 12, ¶ 36. However, despite finding that defense counsel's failure to object to these statements was error, the court concluded that it

[3] Ponshe's resentencing is not at issue in his federal habeas petition. On remand, the sentencing court imposed a 75-year sentence. [9-26] at 31.

was not prejudicial error. [9-5] at 12, ¶ 37. In support of this conclusion, the court cited the other evidence presented at trial, including the expert testimony and Ponshe's inculpatory statements. [9-5] at 12–13, ¶ 37. His request to appeal to the Illinois Supreme Court—which argued only that he was denied a fair trial when the jury was permitted to hear his lawyer's mental impressions of the case—was denied. *See* [9-6]; [9-7].

*2. Postconviction Petition*

Ponshe moved for postconviction relief alleging that (1) he was denied the effective assistance of counsel when his trial lawyer failed to file a motion to suppress his inculpatory statements to the detectives, [9-14] at 13–16, (2) he was denied the effective assistance of counsel when his trial lawyer failed to request a jury instruction allowing the jury to consider a lesser offense than first-degree murder, [9-14] at 19–20, and (3) he was denied a fair and impartial jury because the trial court announced that Ponshe had tried to mislead them, [9-14] at 21–23.[4]

The circuit court granted the State's motion to dismiss. [9-17]. Ponshe appealed, arguing only that the circuit court erred in finding that (1) he failed to make a substantial showing that his trial counsel was ineffective for failing to file a motion to suppress,[5] and (2) he failed to establish that he was denied a fair and impartial

[4] Ponshe does not (and cannot) point to a portion of the trial transcript where the judge actually told jurors that Ponshe was trying to mislead them. He instead appears to be pointing to the court's statement that defense counsel's demonstration was "totally improper" and "not representative of how the parachute deploys." [9-14] at 12.

[5] Specifically, Ponshe asserted that the detectives advised him that he would receive certain benefits if he agreed to incriminate himself and that he ultimately incriminated himself only after the detectives told him that they did not want to break up his family. [9-18] at 19.

trial when the trial court announced to the jury that Ponshe had tried to mislead them. [9-18] at 6.

With respect to Ponshe's ineffective-assistance argument, the appellate court walked through the analysis for establishing deficient performance and prejudice for counsel's failure to file a motion to suppress. [9-20] at 15, ¶ 27. The court first found that defense counsel's decision not to file a motion to suppress amounted to trial strategy. [9-20] at 16, ¶ 29. According to the court, by choosing to have Ponshe's interview with the detectives shown, counsel could have intended to show the jury Ponshe's emotional response, that he wavered and was not conclusive or emphatic about killing H.B., and that he made inculpatory statements only because he wanted to see his son. [9-20] at 16, ¶ 29.

The appellate court also found that Ponshe failed to show a reasonable probability that the motion to suppress would have been granted (or, if it were granted, that this would have changed the outcome of the proceedings). [9-20] at 16, ¶ 30. The court pointed out that Ponshe had cited only one factor to support his contention that his statement was involuntary: that the detectives had asserted that they did not want to break Ponshe and his son up. [9-20] at 16, ¶ 30. Ponshe further asserted that only his statement that he "must've done it" was involuntary. [9-20] at 16, ¶ 30. His statement about smacking H.B. and being "a fucking murderer" would have therefore been admitted. [9-20] at 16, ¶ 30.

But even absent the inculpatory statements, the appellate court noted that "the evidence of defendant's guilt was overwhelming." [9-20] at 17, ¶ 31. Because the

outcome of the proceedings would have been the same without Ponshe's "I must've done it" statement, the appellate court concluded that any deficiency in counsel's failure to move to suppress this statement did not prejudice Ponshe. [9-20] at 17, ¶ 31.

With respect to Ponshe's judicial bias argument, the appellate court found that the claim was unpreserved where defense counsel did not object when the State and court proposed the instruction and where the issue was not raised on direct appeal. [9-20] at 18, ¶ 34. Ponshe also did not argue ineffective assistance of appellate counsel for failing to raise the claim on appeal. [9-20] at 18, ¶ 34. Despite finding that the claim was forfeited, the court addressed the merits and explained that Ponshe could not "show that the court exhibited judicial bias." [9-20] at 18, ¶ 35. Specifically, in the context of the proceedings, the appellate court found that the trial court's displeasure was grounded in valid frustration and the court's comments, at most, illustrated its irritation with defense counsel and not Ponshe himself. [9-20] at 20, ¶ 36.

The appellate court's order also contained a footnote addressing the parachute evidence issue, which was mentioned—but not fully argued—in Ponshe's appeal. [9-20] at 18, ¶ 34 n.4. The court noted that admitting the parachute incident at trial essentially allowed the State to conduct a "trial within a trial," "creating a fairly blatant due process issue and a strong possibility that [Ponshe] was convicted based on the alleged parachute incident and not the incident for which he was actually on trial." [9-20] at 18, ¶ 34 n.4. However, the appellate court deemed this argument forfeited because Ponshe did not bring this claim on direct appeal, argue the ineffective assistance of appellate counsel for failing to raise the issue on direct

appeal, or present a "cohesive argument" on the issue in the appeal pending before it. [9-20] at 18, ¶ 34 n.4.

## III. Analysis

Ponshe now raises five claims in his federal habeas petition. First, he renews the claim of ineffective assistance of counsel for failing to move to suppress inculpatory statements. Second, he renews the claim of judicial bias. Third, he argues that his due process rights were violated when the trial court admitted evidence of prior bad acts (the parachute incident). Fourth, he renews the claim of ineffective assistance of counsel for failing to object to the publication of defense counsel's mental impressions. Finally, he argues that his due process rights were violated when the trial court declined to issue jury instructions on lesser-included offenses.

### A. Timeliness

In his petition, Ponshe believed he was one day late in filing for a writ of habeas corpus and asked the court to apply equitable tolling. [1] at 1–3. Respondent pointed out that petitioner's § 2254 petition was timely. [8] at 10. The statute of limitations is an affirmative defense and can be waived. *See Schlemm v. Pizzala*, 94 F.4th 688, 690 (7th Cir. 2024). Therefore, I deem the petition timely and do not consider the question of equitable tolling.

Even if respondent had not waived the statute of limitations, the petition is timely. The limitations period for an individual in custody pursuant to the judgment of a state court to apply for a writ of habeas corpus is one year. 28 U.S.C. § 2244(d)(1). The time runs from the latest of the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review. *Id.* § 2244(d)(1)(A). Ponshe's direct appeal Petition for Leave to Appeal was denied on March 20, 2019. [9-13]. His conviction therefore became final on June 18, 2019, at the expiration of the 90-day period for filing a certiorari petition. *See Anderson v. Litscher*, 281 F.3d 672, 674–75 (7th Cir. 2002). The limitations clock then ran for 183 days before Ponshe filed his postconviction petition on December 19, 2019.[6] The statute of limitations was tolled while Ponshe's postconviction petition was pending. 28 U.S.C. § 2244(d)(2). Ponshe's postconviction Petition for Leave to Appeal was denied on January 29, 2025. [9-22]. The statute of limitations began running the next day and ran for 181 days until Ponshe filed his federal petition on July 29, 2025. [1]. Thus, the limitations period ran for 364 days and Ponshe's petition is timely.

### B. Failure to Move to Suppress

Ponshe presented his first claim—that counsel was ineffective for failing to move to suppress his confession—to both the Illinois Appellate Court and the Illinois Supreme Court on postconviction review. *See* [9-18]; [9-21]. Respondent notes that Ponshe's grounds for suppression were narrower in state court, where he argued only that the statement, "I must've done it," should have been suppressed because the detectives impermissibly promised him family reunification. [8] at 16 (citing [9-20] at 16 and [9-18] at 15). However, assessing the voluntariness of any part of the confession would necessarily consider the broader circumstances of the interrogation.

---

[6] When computing a limitations period, courts exclude the day of the event that triggers the period. Fed. R. Civ. P. 6(a)(1)(A).

*See, e.g.*, *Carter v. Thompson*, 690 F.3d 837, 843 (7th Cir. 2012). Ponshe's broader claim as articulated by his present petition was within the scope of his original claim.

The Antiterrorism and Effective Death Penalty Act "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (quoting 28 U.S.C. § 2254). The standard set by the Act is "meant to be" difficult to meet. *Richter*, 562 U.S. at 102. Federal relief is intended to "guard against extreme malfunctions in the state criminal justice systems" and not serve as "a substitute for ordinary error correction through appeal." *Id.* (citation omitted).

Ponshe does not contend that the Illinois Appellate Court unreasonably determined facts under § 2254(d)(2). He instead argues that the appellate court unreasonably applied *Strickland* when it rejected his claim. [17] at 5; *see also* 28 U.S.C. § 2254(d)(1). A defendant is deprived of constitutionally adequate representation if his counsel's alleged errors were "outside the wide range of professionally competent assistance," and if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harper v. Brown*, 865 F.3d 857, 860–61 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690, 694). The *Strickland* analysis presumes that "counsel's conduct falls within the wide range of reasonable professional assistance." *Lee v. Avila*, 871 F.3d 565, 570–71 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 688–89). Like the *Strickland* standard, review of claims under § 2254(d) is also "highly deferential," so federal court review of an ineffectiveness claim in a habeas petition is "doubly

deferential." *Id.* (quoting *Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016)); *Winfield v. Dorethy*, 871 F.3d 555, 560 (7th Cir. 2017).

The state court reasonably applied *Strickland*. The court identified and articulated the correct standard. [9-20] at 15, ¶ 27. The court rejected Ponshe's argument because it found that "defense counsel's decision not to file a motion to suppress amounted to trial strategy," and then cited to its own precedent for the proposition that counsel's failure to file a motion to suppress does not establish incompetent representation where the motion would have been futile. [9-20] at 16, ¶ 27 (citing *People v. Brickhouse*, 115 N.E.3d 248, 259 (Ill. App. Ct. 2018)). This was a determination that counsel's performance was not deficient and not prejudicial.

"In order to establish prejudice resulting from defense counsel's failure to file a motion to suppress, a defendant must show a reasonable probability that (1) the motion to suppress would have been granted and (2) the outcome of the trial would have been different had the evidence been suppressed." *Brickhouse*, 115 N.E.3d at 259. The appellate court concluded that Ponshe had failed to show *both* "a reasonable probability that the motion to suppress would have been granted or that, if it was granted, it would have changed the outcome of the proceedings." [9-20] at 16, ¶ 30.

Though the court did not go into much detail on the first prong, it determined that Ponshe had "failed to prove that his statement was involuntarily compelled or induced." [9-20] at 16, ¶ 30.[7] Ponshe cites *Lynumn v. Illinois*, 372 U.S. 528 (1963), for

[7] As mentioned above (and noted by respondent), the appellate court found that Ponshe cited "only one factor to support his contention that his statement was involuntary" and asserted that "only one statement was involuntary." [9-20] at 16, ¶ 30. Ponshe now cites several factors

the proposition that the state court's "no-coercion finding" was unreasonable. [17] at 6–7. But *Lynumn* does not involve an ineffective-assistance-of-counsel claim nor the viability of a motion to suppress. Instead, the Court in *Lynumn* found that a confession was involuntary where it was made following threats that the defendant's children would be taken from her—or a promise that they would not be taken from her—based on whether she cooperated. 372 U.S. at 534.

Here, the appellate court concluded that the detectives' assertion that they did not want to "break" Ponshe and his son up did not amount to coercion. [9-20] at 16, ¶ 30. The detectives did not make an explicit promise that Ponshe and his son would be reunited if he confessed. The persuasion and pressure deployed by the detectives fell short of the kind of tactics that would overcome a suspect's will. Therefore, even if counsel had moved to suppress the inculpatory statements, it is doubtful that such a motion would have been granted, or so a state court could reasonably conclude.

Further, as noted above, Ponshe does not meaningfully challenge the court's factual findings under § 2254(d)(2). Petitioner argues that the court's "strategic decision" rationale cannot bear the weight placed on it, but he has not requested an evidentiary hearing, and has produced no evidence contradicting the appellate court's finding that "defense counsel's decision not to file a motion to suppress amounted to trial strategy." *See* [17] at 7; [9-20] at 16, ¶ 29. The court was not unreasonable in

---

to support his contention that his inculpatory statements were involuntary—that "detectives repeatedly assured Petitioner he was not going to prison, promised family reunification, and characterized the interrogation as a means of helping him." [1] at 10. Though I find that Ponshe's narrow presentation of the issue on postconviction review was sufficient to put the entirety of his confession at play, his argument ultimately fails on the merits because the state court did nothing unreasonable in its application of *Strickland*.

believing "counsel could have intended to show the jury [Ponshe's] emotional response, that he was not affirmative about killing H.B., and that he only made any statements because he wanted to be sure he would see his son." [9-20] at 16, ¶ 29. A strategy was objectively apparent from the record, and the state court was not unreasonable in thinking that a defense attorney might see some mitigation in Ponshe's demeanor on the recording. Particularly where it is unlikely that a motion to suppress would have been granted in the first instance, it is reasonable to conclude that defense counsel sought to use the statements for other purposes. The appellate court's "trial strategy" determination was not unreasonable.

But even if Ponshe could establish that a motion to suppress would have been granted, the appellate court also concluded that the outcome of the trial would not have been different absent his inculpatory statements. *See* [9-20] at 16–17, ¶¶ 30–31 (noting that "the evidence of [Ponshe's] guilt was overwhelming" and deducing that Ponshe's admission "would not have changed the outcome of the proceedings"). The court noted that the "remaining evidence at trial" showed that H.B.'s injuries were inconsistent with Ponshe's explanation and even the defense experts endorsed the prosecution expert's qualifications while being unable to offer a contrary theory of causation. [9-20] at 17, ¶ 31. H.B.'s audible cries and visible injuries within days of her death, the mother's testimony of Ponshe's claimed explanation, and the expert evidence on causation and implausibility of Ponshe's explanation all point to petitioner's guilt independently of his confession. It was not unreasonable for the

state court to conclude that no prejudice resulted from counsel's decision not to file a motion to suppress.

Applying the doubly deferential standard, the state court reasonably applied *Strickland* to the facts, and Ponshe's petition on this ground is denied.

### C. Failure to Object to Admission of Lawyer's Mental Impressions

Ponshe presented his fourth claim—that counsel was ineffective for failing to object to admission of the recorded phone call disclosing his lawyer's thoughts on the case—to both the Illinois Appellate Court and the Illinois Supreme Court on direct appeal. *See* [9-1]; [9-6]. Similar to his first claim, Ponshe argues only that the appellate court unreasonably applied *Strickland* when it rejected his claim and does not contend that the Illinois Appellate Court unreasonably determined facts under § 2254(d)(2).

The appellate court reasonably applied *Strickland* to Ponshe's mental-impressions claim. The court began by identifying and articulating the standard for establishing a claim of ineffective assistance of counsel. [9-5] at 11, ¶ 34. It found that defense counsel's failure to object to the publication of his mental impressions of the case to the jury was error, but was not, as required by *Strickland*, prejudicial error. [9-5] at 12, ¶ 37.

"In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. *Strickland* instead asks whether it is "reasonably likely" the

result would have been different. *Id.* In other words, the "likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

Here, it was not unreasonable for the Illinois Appellate Court to conclude that Ponshe's evidence of prejudice fell short of this standard. The court cited to the expert testimony finding that H.B.'s injuries were not consistent with a fall into the crawl space (Ponshe's explanation for her injuries) and found that the defense medical experts failed to contradict the essence of the prosecution expert's findings. [9-5] at 12, ¶ 37. The court also pointed to several of Ponshe's inculpatory statements to assert that he could not "establish a reasonable probability that, absent counsel's error, the result of the trial would have been different." [9-5] at 13, ¶ 37.

Petitioner's argument to the contrary is unconvincing. For one, framing the issue as defense counsel conceding "that he did not believe in his client" is a mischaracterization of the statement. [17] at 11. Not only did the statements take the form of a telephone call between Ponshe and his father (and were not directly from defense counsel), but the exact language of the conversation shows that defense counsel thought getting Ponshe out of trouble was going to be "fucking rough," not that Ponshe was in fact guilty or his defense incredible. [9-5] at 5, ¶ 13.

Further, although Ponshe's prejudice argument depends on the inadmissibility of the other evidence cited to by the appellate court—namely, inculpatory statements—that does not make the state court's analysis unreasonable. As discussed above, the court had also determined that without the confession, an acquittal was not reasonably likely. And the appellate court did not unreasonably

assess the weight of the telephone call between Ponshe and his father in the context of the trial.[8] The state court reasonably applied *Strickland* to the facts, and Ponshe's petition on this ground is denied.

**D. Procedural Default**

Respondent argues that Ponshe's second, third, and fifth claims are procedurally defaulted. [8] at 11–13. To preserve his claims for federal habeas review, Ponshe had to fairly present each claim to the Illinois Appellate Court and the Illinois Supreme Court, either on direct appeal or through a postconviction petition. *Smith v. McKee*, 598 F.3d 374, 382–83 (7th Cir. 2010). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address the merits of those claims in the first instance." *Davila*, 582 U.S. at 527 (internal quotation marks omitted). Where a state court resolves a claim on an independent and adequate state procedural ground, the claim is procedurally defaulted on federal habeas review. *Id.* at 527–28; *see also Richardson v. Lemke*, 745 F.3d 258, 268–69 (7th Cir. 2014).

"A federal court may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Smith*, 598 F.3d at 382. A cause is "an objective factor,

[8] Notably, despite the State's extensive discussion of the phone call between Ponshe and his father in its closing argument, the prosecution didn't use the evidence to suggest to the jury that defense counsel didn't believe in his own case. [9-24] at 1306–08. The State instead argued that the phone call was evidence that Ponshe had lied to the police and that he had "lost it." [9-24] at 1306.

external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *Id.* (citation omitted). Prejudice means "an error which so infected the entire trial that the resulting conviction violates due process." *Id.* (citation omitted).

*1. Judicial Bias (Claim 2)*

In his second claim, Ponshe argues that he was denied his due process right to a fair trial when the trial judge "pointedly contrasted" his effort to demonstrate the parachute incident with the State's attempt to demonstrate the same device. [17] at 8–9. Ponshe presented his judicial bias claim to both the Illinois Appellate Court and the Illinois Supreme Court on postconviction review. *See* [9-18]; [9-21]. The Illinois Supreme Court declined to hear the appeal, and the Illinois Appellate Court concluded that the argument had been forfeited because Ponshe could have—but failed to—raise the claim on direct appeal. [9-20] at 18, ¶ 34. Ponshe does not challenge this finding of forfeiture and instead argues that the claim is reached through the miscarriage-of-justice gateway. [17] at 4.

A petitioner passes through this gateway by showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In other words, petitioner "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* The "actual innocence" standard allows the reviewing court to consider all evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it)." *Id.* at 328.

Petitioner has failed to meet the "demanding" test. *See Dixon v. Williams*, 93 F.4th 394, 403 (7th Cir. 2024). First, Ponshe offers no new evidence. *See Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015) (noting that a gateway claim of actual innocence under *Schlup* is viable only where the petitioner presents evidence not previously considered). Second, Ponshe's petition suggests that he could have been convicted of manslaughter. [17] at 4. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation omitted); *see Rozzelle v. Fla. Dep't of Corr.*, 672 F.3d 1000, 1012 (11th Cir. 2012) (finding that a petitioner's claim that he was guilty only of manslaughter and not murder could not satisfy *Schlup*'s "actual innocence" requirement); *see also Lairy v. United States*, 142 F.4th 907, 915–16 (7th Cir. 2025) (suggesting that the misclassification of a conviction does not open the actual innocence gateway). Thus, the fact that reasonable jurors may have found Ponshe guilty of involuntary manslaughter as opposed to first-degree murder means he cannot get federal habeas review through the miscarriage-of-justice gateway.

Further, as discussed above, Ponshe has not established that his counsel was ineffective for failing to move to suppress his inculpatory statements (or that they would have been suppressed had the motion been made). As the Illinois Appellate Court explained, there was plenty of evidence to support Ponshe's conviction. *See* [9-20] at 17, ¶ 31 (finding that "the evidence of [Ponshe's] guilt was overwhelming"). And Ponshe has offered no evidence to establish that he was prejudiced by the trial court's

behavior at trial. [9-20]. Ponshe's procedural default of this claim is not excused and I do not reach the merits.

### *2. Parachute Incident (Claim 3)*

Ponshe similarly does not challenge the Illinois Appellate Court's finding that his prior bad acts claim was forfeited and that the claim is therefore procedurally defaulted. However, unlike his second claim, Ponshe argues that he can demonstrate cause and prejudice for procedurally defaulting it. [17] at 2.

For cause, he argues that the admission of Eggleston's testimony is bound up with trial counsel's failure to object to that testimony. [17] at 3. "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). But the *Martinez* rule is narrow and does not save a claim defaulted by an ineffective-assistance-of-counsel claim that itself was defaulted in Illinois. *See Crutchfield v. Dennison*, 910 F.3d 968, 978 (7th Cir. 2018) (Illinois law gives prisoners a meaningful opportunity to litigate claims of ineffective assistance of trial counsel on direct appeal). And as petitioner concedes, [17] at 3, the *Martinez* exception does not reach claims of ineffective assistance of appellate counsel. *Davila*, 582 U.S. at 530–31. Ponshe is essentially challenging the effectiveness of appellate counsel and this is exactly the kind of argument that *Davila* sought to preclude. *See Davila*, 582 U.S. at 536.

The appellate court noted that Ponshe offered no argument about his appellate counsel's failure to bring the claim on direct appeal. [9-20] at 18, ¶ 34 n.4. So while

the appellate court saw "a fairly blatant due process issue" in the admission of the prior bad act evidence, [9-20] at 18, ¶ 34 n.4, Ponshe cannot now bring that claim in federal habeas review because he had an opportunity in the state courts to address it but no cause for failing to do so.

Because petitioner cannot show cause for his failure to preserve state-court review of his due process claim about the prior bad act evidence, I do not reach his prejudice argument. *See Davila*, 582 U.S. at 524 (a state prisoner must establish both cause and prejudice to excuse procedural default).[9]

*3. Jury Instructions (Claim 5)*

Ponshe failed to present his jury-instructions claim through one round of state-court review. Though he briefed the issue to the Illinois Appellate Court on direct appeal, [9-2], he did not raise it again in his request to appeal to the Illinois Supreme Court, [9-6]. Ponshe now argues that this procedural default should be excused under the miscarriage-of-justice gateway. [17] at 4–5. For the same reasons discussed above, that argument fails.

**E. Certificate of Appealability**

A certificate of appealability may issue if Ponshe has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This standard (which permits a claim to be decided on the merits rather than on procedural grounds) requires Ponshe to show that "reasonable jurists would find the district court's

[9] Ponshe also argues that the miscarriage-of-justice gateway independently reaches this claim, but as explained above, he has failed to produce evidence of actual innocence.

assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Ponshe argues that each of his claims meets this "modest threshold." [17] at 13. I disagree.

Ponshe contends that "Claim 1 asks whether *Lynumn* tolerates a confession extracted by repeatedly tying a father's reunion with his son to his confession." [17] at 13. But this mischaracterizes the holding in *Lynumn,* the interrogation of Ponshe, and the scope of federal habeas review where the constitutional claim is viewed through the doubly deferential lens of *Strickland*. Reasonable jurists would not debate whether the appellate court unreasonably applied *Strickland* to its assessment of the likelihood of success of a motion to suppress.

The procedural rulings of Ponshe's second, third, or fifth claims and their procedural disposition are not reasonably debatable. Nor is the fact that Ponshe has failed to produce evidence of actual innocence.

Ponshe says that "Claim 4 asks whether counsel could constitutionally let the jury hear his own verdict on the case." [17] at 13. Again, the challenged evidence does not constitute an admission of guilt by defense counsel. Even if it did, reasonable jurists would not find that Ponshe was prejudiced by this evidence, where there was sufficient other, admissible evidence presented at trial to convict. Ponshe's request for a certificate of appealability is denied.

## IV. Conclusion

The petition for a writ of habeas corpus and certificate of appealability is denied. The Clerk shall enter judgment in favor of respondent.

ENTER:

Manish S. Shah
United States District Judge

Date: September 9, 2026